UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------x
                             :
RENU GUPTA,                  :
                             :
        Plaintiff,           :
                             :      Civil Case No.
v.                           :
                             :      3:98CV2153(AWT)
CITY OF NORWALK,             :
                             :
        Defendant.           :
                             :
----------------------------x
```

## RULING ON DEFENDANT'S MOTION FOR JUDGMENT AS A
## MATTER OF LAW, FOR A NEW TRIAL, AND FOR REMITTITUR

For the reasons set forth below, the defendant's motion for
judgment as a matter of law and its motion for a new trial are
being denied, and its motion for remittitur is being denied
without prejudice.

**I.    Motion for Judgment as a Matter of Law on
the Plaintiff's Third Cause of Action:
Section 1983 Procedural Due Process Claim**

The defendant has renewed its motion, pursuant to Fed. R.
Civ. P. 50(b), for judgment as a matter of law.  In part I of the
Memorandum of Law in Support of Motion for Judgment as a Matter
of Law, Motion for New Trial, Motion for Remittitur (Doc. No.
109) and Supplemental Memorandum of Law in Support of Motion for
Judgment as a Matter of Law, Motion for New Trial, Motion for
Remittitur (Doc. No. 119) (collectively and as supplemented by
Doc. Nos. 131 and 134, the "Defendant's Memorandum"), the
defendant contends that the plaintiff did not have a cognizable
property interest and that she was afforded all the process that

was due, specifically, a post-deprivation grievance proceeding under the collective bargaining agreement.

Evaluation of the plaintiff's claim requires determination of "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [she] was due before [she] could be deprived of that interest." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2003).

As to the first step of the inquiry, "the threshold questions are whether [the plaintiff] has alleged a state law property interest, and whether the Fourteenth Amendment protects that interest." <u>Id.</u> As to this step of the inquiry, the court explained in <u>Ciambriello</u> that:

> In order to have had a property interest in [a position], [the plaintiff] must have had a legitimate claim of entitlement to it. A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge. While state law determines whether a public employee has a property interest in continued employment, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause. . . . We have repeatedly recognized that a collective bargaining agreement may give rise to a property interest in continued

-2-

employment.

Id., at 313-14 (internal quotation marks and citations omitted).

Here Section 10 of the defendant's personnel rules and regulations, Defendant's Exhibit 92 (the "Personnel Regulations"), show the plaintiff was guaranteed not only that she would not be dismissed but that she would not be suspended absent just cause.  Section 10a. describes the reasons an employee can be subjected to disciplinary action, and Section 10b. describes the penalties, which are reprimand, suspension and dismissal.  Therefore the plaintiff had a property interest in continuing her employment without being suspended.

The court then looks at federal constitutional law to determine whether that interest rises to the level of a constitutionally protected property interest.  "In determining whether a particular property interest rises to the level of constitutional protection, a court must look to whether the interest involved would be protected under state law and must weigh the importance to the holder of the right."  Id. at 317 (quotation omitted).  In Narumanchi v. Bd. of Trustees of the Ct. State Univ., 850 F.2d 70 (2d Cir. 1988), the plaintiff was suspended for two weeks without pay.  The Second Circuit noted that the district court properly determined that the defendants' decision to suspend Narumanchi without pay implicated a protected property interest.  See id. at 72.  (Also, because both parties

-3-

mention <u>Narumanchi</u> in their briefing, it bears emphasizing that
the grievance procedure under the collective bargaining agreement
in <u>Narumanchi</u> provided for <u>pre-deprivation</u> notice and hearing
rights, and that the Second Circuit approved the district court's
finding that the grievance procedure contained in the collective
bargaining agreement provided Narumanchi with whatever process
was due as a matter of federal law.)  <u>See also</u> <u>O'Conner v.</u>
<u>Pierson</u>, 426 F.3d 187, 197 (2d Cir. 2005) ("Under this circuit's
case law, therefore, the Constitution required the Board to
provide O'Conner with adequate procedural protections in relation
to placing him on unpaid sick leave, which is the equivalent of
suspending him without pay.").  Therefore, the court concludes
that here the plaintiff, who was being suspended for 15 days
without pay, had a constitutionally protected property interest.

As to the second step of the inquiry, i.e., what process was
due to the plaintiff:

> The determination of whether one is entitled to a pre-
> deprivation hearing is fact-specific, as "due process is
> flexible and calls for such procedural protections as the
> particular situation demands."  <u>Mathews v. Eldridge</u>, 424
> U.S. 319, 334 (1976).  In order to determine whether the
> Constitution requires a pre-demotion hearing under the
> circumstances of this case, we must balance three factors:
>
> > First, the private interest that will be affected by

-4-

the official action; second, the risk of an erroneous

deprivation of such interest through the procedures

used, and the probable value, if any, of additional or

substitute procedural safeguards; and finally, the

Government's interest, including the function involved

and the fiscal and administrative burdens that the

additional or substitute procedural requirement would

entail.

Id. at 335.  While Mathews involved social security

disability benefits, we apply the Mathews balancing test in

the context of government employment.

Ciambriello, at 319-320.  In view of the fact that the standard

calls for attention to the procedural protections called for by

the particular situation, the court finds unhelpful the numerous

cases cited by the defendant with no attention to the particular

situations presented in those cases.

The first factor is the private interest that will be

affected by the official action.  Here the plaintiff's particular

situation reflected that the interest was a substantial one

because she was being suspended for three weeks without pay.  In

Strong v. Bd. of Educ. of Uniondale Union Free School District,

902 F.2d 208, 212 (2d Cir. 1990), the court recognized that "the

private interest affected - the right of a tenured teacher to

continue practicing her profession and receiving her salary - is

substantial indeed."  In <u>Narumanchi</u>, which involved a two week suspension without pay, the court wrote that "the limited procedural rights guaranteed under the circumstances of this case" were satisfied, so it is apparent that the suspension for two weeks without pay was a private interest that merited affording the employee some procedural rights.  Looking at the specific facts in this case, on August 12th, when the Director of Personnel gave the plaintiff the letter concerning the meeting on August 14th, the plaintiff shared that she had no money and the Director of Personnel informed the plaintiff that she could apply for unemployment benefits.  Moreover, as the plaintiff reminded the Director of Health in her August 31, 1998 letter (Plaintiff's Exhibit 34), the plaintiff had not been paid her accrued sick leave since April and was borrowing money to survive; at the time the decision to suspend the plaintiff was made, she had not been paid that accrued sick leave.  It was under those circumstances that a decision was made to suspend the plaintiff without pay for 15 days.  Thus, the court concludes that in the particular situation presented in this case the plaintiff's private interest that was being affected was substantial.

The second factor is the risk of an erroneous deprivation of the interest that will be affected through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.  Here, there was a significant risk of an

-6-

erroneous deprivation through the procedures used.  The plaintiff
was informed that the August 14th meeting would be held for the
purpose of discussing her absence from work during her period of
illness and that she should bring travel and medical information
to the meeting.  At no time prior to her suspension was the
plaintiff told that she would be exposed to the possibility of
discipline on the grounds stated in the September 9, 1998 letter
notifying her, retroactively, that she had been suspended.  As
evidenced by the plaintiff's October 30, 1998 letter to the
Director of Health (Plaintiff's Exhibit 36), the plaintiff had
numerous factual contentions that would have been considered,
even if they were not then credited, by the defendant prior to
the decision to suspend the plaintiff if the defendant had given
the plaintiff notice of the charges against her.  Moreover, the
plaintiff was asked to provide additional information, and
without being informed of the charges against her, the plaintiff
had no way of knowing whether additional information that had not
been asked for would give the defendant a more accurate picture.
It is difficult to imagine a scenario where the risk of error
would be greater that one where the employee is not informed she
is the subject of disciplinary action until after she has already
served the suspension.  The bare minimum by way of procedural
safeguards, i.e., notice of the charges against her, an
explanation of the employer's evidence, and an opportunity to

-7-

present her side of the story, would have added a great deal of value to the process here.

Third, as in Ciambriello, "the governmental interest involved here is virtually non-existent." Ciambriello, at 320. This is not a situation like that in Gilbert v. Homar, 520 U.S. 924 (1997), where the employee worked as a campus police officer and had been arrested. Nor was the plaintiff an unsatisfactory employee. As evidenced by the fact that the plaintiff attempted to report to work on August 12th and the letter of suspension issued on September 9th, the defendant was not faced with a situation that made it necessary or appropriate to impose a suspension immediately while the matter was being investigated. There has been no reason given why the defendant could not have waited until the plaintiff had been given notice and an opportunity to be heard before imposing the suspension.

Balancing these three factors, the court concludes that the record here shows that due process required that the plaintiff be given oral or written notice of the charges against her, an explanation of the defendant's evidence and an opportunity to present her side of the story. Moreover, the evidence at trial was more than sufficient to support the jury's conclusion that the defendant had failed to satisfy this requirement of due process at the time it imposed the disciplinary suspension.

In part III of the Defendant's Memorandum, the defendant

sets forth an argument that is based on a misreading of Narumanchi and on cases where a post-deprivation remedy was found to constitute the process that was due the employee.  As to Narumanchi, the defendant notes correctly that the court there concluded that summary judgment was properly granted in favor of the defendants on the procedural due process claim because of the plaintiff's failure to utilize the grievance procedure provided in the collective bargaining agreement.  However, although the defendant quotes the pertinent language from Narumanchi, it ignores the fact that the grievance procedure provided in that collective bargaining agreement provided for a pre-deprivation notice and hearing.  As to the other cases cited by the defendant, where a post-deprivation remedy was found to constitute due process, the instant case is more analogous to Narumanchi than to those cases, and the defendant omits altogether an analysis of the three factors that must be balanced in determining what process is due.

In part IV of the Defendant's Memorandum, the defendant, using a mitigation of damages theory, argues that the plaintiff was required to exhaust the grievance procedure before filing suit.[1]  The defendant makes a similar argument in part VII of the

---

[1] "Failure to mitigate damages is an affirmative defense and therefore must be pleaded."  Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1580 (2d Cir. 1994).  The court notes that it can find no indication that the defendant ever filed a pleading that included mitigation of damages as an affirmative defense.  The defendant filed an answer to the

-9-

Defendant's Memorandum.  However, although she is required to avail herself of the right to be heard pursuant to constitutionally adequate state remedies, if available, the plaintiff in a Section 1983 action is not required to exhaust her administrative remedies before bringing suit.  See Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496 (1982).  In contrast to the grievance procedure under the collective bargaining agreement in Narumanchi, the grievance procedure here failed to provide a constitutionally adequate process in the plaintiff's case in that it did not provide for a pre-deprivation hearing for a situation like the plaintiff's.  Moreover, a post-deprivation proceeding cannot remedy an initial failure to satisfy a requirement that there have been a pre-deprivation hearing.  See Todaro v. Norat, 112 F.3d 598, 599-600 (2d Cir. 1997).

In part VI of the Defendant's Memorandum, the defendant argues that the plaintiff did not present sufficient evidence to support an award of $25,000 for emotional distress.  The

---

original complaint (Doc. No. 6), and subsequently filed a document titled "Amended Special Defenses" (Doc. No. 11). Neither of these documents include the affirmative defense of mitigation of damages.  In addition, on the eve of trial, the defendant faxed to chambers a document dated December 12, 2000 that was represented to be defendant's answer and special defenses to the First Substituted Complaint, which does include a special defense of failure to mitigate to damages.  However, this faxed document was never filed, and the defendant had filed a motion on January 10, 2001 for extension of time to February 1, 2001 to file its answer to the First Substituted Complaint (see Doc. No. 30), so it is unclear why this document is dated December 12, 2000.

defendant contends that the claim for emotional distress was
supported only by the plaintiff's subjective testimony and that
the testimony was "low key."  However, the plaintiff's testimony
as to her interactions with the Director of Health and the
Director of Personnel and as to how she was treated by the
defendant, coupled with the jury's opportunity to witness the
plaintiff's demeanor as she testified about her experiences and
their impact on her and the corroborating documentary evidence
submitted by the plaintiff, is more than sufficient to support
the jury's conclusion that the plaintiff suffered emotional
distress for which $25,000 was fair and just compensation.  The
plaintiff's counsel specifically addressed this element of
damages during closing argument, marshaling the evidence for the
jury and asking the jury to simply be fair.[2]

Finally, the defendant would be entitled to judgment as a
matter of law on the plaintiff's Section 1983 procedural due
process claim if the Director of Health and the Director of
Personnel are not policymaking officials for the defendant.
However, the evidence at trial demonstrated that they are policy
making officials.

Section 10b. of the Personnel Regulations provides with
respect to suspension that the department head (here the Director

---

[2]The defendant also argues for relief in the form of a new
trial and a remittitur with respect to this damages award.  For
the reasons stated, relief in either of those forms is also not
appropriate.

of Health) can suspend any permanent employee, but that notice of
such suspension shall be reported immediately to the Director of
Personnel.  Section 10b. also provides that employees may use the
applicable grievance procedure to appeal the suspension.  See
Defendant's Exhibit 92, at 8.  The collective bargaining
agreement, Defendant's Exhibit 21, provides for three steps to
the grievance procedure.  The first step is presentation of the
grievance to the department head, here the Director of Health.
The second step is presentation of the grievance to the Director
of Personnel.  The third step is arbitration before the
Connecticut State Board of Mediation and Arbitration.  This board
is not a part of the City of Norwalk.  Thus, in this case, beyond
the Director of Health and the Director of Personnel there is no
appeal to any other official or agency of the defendant, and as
demonstrated by their testimony at trial, those two individuals
made a joint decision to suspend the plaintiff.  "Municipal
liability attaches only where the decisionmaker possesses final
authority to establish municipal policy with respect to the
action ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469,
481 (1986).  That requirement has been satisfied here.

## II.  Motion for a New Trial

In part II of the Defendant's Memorandum, the defendant
moves pursuant to Federal Rule of Civil Procedure 59(a) for a new
trial.  "For a district court to order a new trial under Rule

-12-

59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." <u>Manley v. Ambase Corp.</u>, 337 F.3d 237, 245 (2d Cir. 2003) (internal quotation marks and citations omitted).  The defendant argues that the court should order a new trial to prevent a clear miscarriage of justice.  In substance, the defendant argues that the court should have delayed the trial to allow the grievance under arbitration to proceed to conclusion.  However, as discussed above, under the circumstances of this case, exhaustion of the grievance procedure was not required prior to bringing a claim pursuant to 42 U.S.C. § 1983.  Thus, the court finds unpersuasive the defendant's argument that it would have been preferable to have had a decision made by the State Board of Mediation and Arbitration as to whether or not the 15 day suspension would stand prior to the trial in this case, and also unpersuasive its additional argument that doing so could have made available to the defendant (or the plaintiff if she had prevailed) additional evidence for use at the trial in this case.  Nothing in the arguments advanced by the defendant persuades the court that the verdict in this case constitutes a miscarriage of justice.

## III. <u>Motion for Remittitur</u>

In part V of the Defendant's Memorandum, the defendant

requests that the court reduce the $4,752.00 award for damages for suspension to $3,299.10 (to be further reduced by tax and social security obligations).  The plaintiff's only response pertaining to this amount is found in plaintiff's Motion for a New Trial (Doc. No. 112), which the court has granted.  Thus, the amount of the "damages for suspension" will be the subject of a future proceeding.  Accordingly, the court is denying the motion for remittitur without prejudice to renewal after the amount of the "damages for suspension" has been determined in that future proceeding.

## IV.  <u>Conclusion</u>

For the reasons set for above, the defendant's motion for judgment as a matter of law and its motion for a new trial (Doc. No. 108) are hereby DENIED, and its motion for remittitur (Doc. No. 108) is hereby DENIED without prejudice.

It is so ordered.

Dated this 31st day of March 2007 at Hartford, Connecticut.


                                   /s/AWT
                            _____
                              Alvin W. Thompson
                            United States District Judge